UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YOEL BETANCOURT, ROBERTO GUTIERREZ,
JORGE CALVARO, OSVALDO CORRALES,
HERIBERTO ESTRADA,
HECTOR GARCIA, MARK TURNER,
LUIS DE JESUS RODRIGUEZ, CARLOS HERNANDEZ,
OSVALDO RAMIREZ MENDEZ,
EZEQUIEL QUIROS, and
RAUL SANTIAGO on behalf of themselves and
other similarly situated persons,

        Plaintiffs,

v.                                    Case No.:  8:14-cv-01219-EAK-MAP

GENERAL SERVICES OF VA, INC.,

        Defendant.

_____/

## DEFENDANT'S AMENDED[1] DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

The Court should enter summary judgment in favor of Defendant because the attached

affidavits, exhibits, and authorities demonstrate that there is no genuine issue of material fact that

Defendant (1) paid the Plaintiffs at least the minimum wage for all hours worked; (2) paid the

Plaintiffs overtime pay at one-and-a-half times their regular hourly rates for all overtime hours;

and (3) does not owe the Plaintiffs any additional wages.  Accordingly, Defendant General

Services of VA, Inc. ("GSI" or "Defendant") moves for Summary Judgment on the claims of

Plaintiffs Yoel Betancourt, Carlos Hernandez, Osvaldo Ramirez Mendez, Jorge Calvario-Castro,

Heriberto Estrada, and Roberto Gutierrez Carranzana (collectively, the "Plaintiffs") pursuant to

Fed. R. Civ. P. 56(a).

---

[1] Amended only to correct filing error.  *See* Doc. 64.

# I.

## INTRODUCTION

### A.    Procedural Posture

The Plaintiffs have each made it clear that they refuse to participate in this action and refuse to comply with the Federal Rules of Civil Procedure and the Court's Orders.  *See* Doc 42, 43, 44, 45, 46, and 47; *see also* Doc. 51 and 61.[2]  Accordingly, Defendant filed a Dispositive Motion to Dismiss Claims of Unrepresented Plaintiffs and for Sanctions ("Motion to Dismiss").  *See* Doc. 52.  The Plaintiffs did not file a response in opposition and the time for doing so has passed.  *See* Local Rule 3.01(b).  Accordingly, that motion is both ripe for review and unopposed.  The Court has previously reminded the parties that they are subject to the Local Rules, and that "**(f)ailure to comply may have adverse consequences, which may include the assessment of attorney's fees or the dismissal of a plaintiff's claims.**"  *See* Doc. 35 (emphasis in original).

Defendant maintains that the Court should dismiss the Plaintiffs' claims for the reasons set forth in the Motion to Dismiss, and because Plaintiffs have not opposed that Motion.[3]  Nonetheless, the deadline for dispositive motions is upon us, and Defendant therefore files the instant motion in advance of the dispositive motion deadline out of an abundance of caution.

---

[2] For example, five of the six Plaintiffs – Yoel Betancourt, Osvaldo Ramirez Mendez, Jorge Calvario-Castro, Heriberto Estrada, and Ariel Milian Hernandez – refused to respond to GSI's First Request for Production of Documents and First Set of Interrogatories (the "written discovery requests"), refused to schedule Court-annexed mediation with GSI, and failed to attend their noticed depositions.  *See* Doc. 52 at pp. 2-4; Doc. 53.  The sixth Plaintiff, Roberto Gutierrez Carranzana, also refused to respond to the written discovery requests and refused to schedule Court-annexed mediation with GSI, though he did attend his deposition.  *See id.*  All six of the Plaintiffs filed motions to withdraw from the instant case.  *See* Doc. 42, 43, 44, 45, 46, and 47; *see also* Doc. 55, 61.  On April 9, 2015, the Court denied those motions, citing the Plaintiffs' failure to articulate the specific relief they sought and to provide legal memoranda.

[3] Further demonstrating their unwillingness to participate in the instant action, the Plaintiffs filed and presently are proceeding in this Court with another lawsuit against GSI, styled *Hernandez, et al. v. General Services of VA, Inc.*, Case No. 8:15-cv-00329-JDW-TBM.  The initial Complaint in that case was dismissed for failure to comply with Fed. R. Civ. P. 8, and the Plaintiffs served an Amended Complaint on April 3, 3015.  *See Hernandez* at Doc. 2, 10, and 11.

## II.

## STATEMENT OF UNDISPUTED FACTS

Plaintiffs worked as "lumpers" in GSI's Tampa, Florida location.  *See* **Exhibit 1**, Affidavit of Kimberly Clem, at ¶ 5.  They filed a three-count Complaint alleging (1) GSI failed to pay them the minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); (2) GSI failed to pay overtime at one-and-a-half times their regular rates, in violation of the FLSA; and (3) GSI violated the Florida common law and owes them an unspecified amount in unpaid wages.  *See* Doc. 19.

### A.     GSI's Tampa Operations

Lumpers are tasked with, essentially, unloading trucks.  Ex. 1, ¶ 7.  To encourage regular attendance, GSI guaranteed Plaintiffs that in any workweek when an individual's attendance met established guidelines it would pay him[4] an "incentive rate" of pay, i.e., a guaranteed hourly rate for non-overtime hours.  *Id.*  The guaranteed "incentive rates" for non-overtime hours ranged from $9.00 to $12.00 per hour, depending on factors such as tenure.  *Id.*  In workweeks where a lumper did not meet the attendance guidelines, the lumper was paid a non-overtime rate equal to at least the applicable minimum wage.  *Id.*  For the vast majority of weeks during the relevant period[5] of April 30, 2011 through April 10, 2015, the Plaintiffs each earned and were paid at their respective guaranteed incentive rate.  *Id.*  In every other week – *i.e.*, in any week in which a Plaintiff had attendance violations – the Plaintiff or Plaintiffs with attendance violations each earned at least the minimum wage for all non-overtime hours during that week.  *Id.*

---

[4] All Plaintiffs are male.
[5] For purposes of this motion, the "relevant period" is defined as the period between April 30, 2011 – the date three years prior to the date the complaint in this action was filed – and April 10, 2015.

**B.      Calculation of Wage Payments to Plaintiffs**

**1.      Non-overtime Pay**

Plaintiffs' incentive rate – the guaranteed hourly rate of pay for weeks with good attendance – is broken down on their paychecks into components.  *See* Ex. 1, App'x A; *see also* Ex. 1, ¶ 8. [6]  The first component is "Lumper Pay."  *Id.*  Lumper Pay is an amount allocated to each lumper each week based on amounts GSI charges its customers for its unloading services. *Id.*  In any workweek where Lumper Pay is less than a lumper's guaranteed incentive rate, Defendant supplements that lumper's pay with the amount necessary to ensure that the lumper receives the guaranteed incentive rate.[7]  Ex. 1, ¶ 8.  This supplemental pay is referred to on the pay statements as "Incentive Pay."[8]  Ex. 1, App'x A; Ex. 1, ¶ 8.  "Make-up Pay," which is applicable only in weeks in which a lumper had an attendance violation, is the amount allocated to a lumper in lieu of Incentive Pay to ensure that the lumper receives at least the minimum wage during the week of the attendance violation(s).  Ex. 1, App'x A; Ex. 1, ¶ 9.[9]

The only other form of non-overtime pay to lumpers is "Hourly - Pass Thru Pay."  Ex. 1, App'x A; Ex. 1, ¶ 10.  This is a separate hourly rate paid by GSI to lumpers for work, separate from their unloading work, that they occasionally perform on behalf of GSI's customers.  Ex. 1, ¶ 10.  During the relevant period, the rate of pay for such work typically was $10.50 per hour. Ex. 1, App'x A; Ex. 1, ¶ 10.

---

[6] The pay statements attached as Appendix A to Exhibit 1 include at least two pay statements for each of the Plaintiffs, and together illustrate all of the variations discussed in Section II(B)(2).

[7] Lumper Pay rarely equals the Incentive Rate, with the result that in most weeks lumpers receive some supplemental Incentive Pay.  Ex. 1, ¶ 8.

[8] To be clear, "Incentive Pay" is not paid in addition to the guaranteed incentive rate, but rather is a supplement to Lumper Pay, used to bring employees up to the incentive rate.  Ex. 1, ¶ 8.

[9] On the pay statements for lumpers, during weeks in which Incentive Pay is paid, the "Qty" column adjacent to Incentive Pay is always 1.00, and the "Rate" column contains the amount of Incentive Pay paid during that week. The 1.00 does not refer to an hour of work, but instead is an indicator that Incentive Pay is paid during that week.

## 2.      Overtime Pay

Lumpers are paid overtime pay for all time worked in excess of 40 hours in a workweek, at time-and-a-half the regular rate.  Ex. 1, App'x A; Ex. 1, ¶ 11.  For lumpers who did not perform work for GSI's customers and therefore did not receive Hourly – Pass Thru Pay, the overtime calculation was simply the hourly rate for the first 40 hours and one and one-half times the hourly rate for time in excess of 40 hours.  Ex. 1, App'x A.  As one example, a lumper with an Incentive Rate of $9.00 who met attendance requirements was paid $9.00 for each of the first 40 hours and $13.50 ($9.00 X 1.5) for each overtime hour.[10]  Ex. 1, App'x A at DEF-001304. As another example, a lumper who had attendance violations during a workweek was paid $7.31 an hour for 22.5 hours of work.[11]  Ex. 1, App'x A at DEF-001400.

A lumper who also performed work for GSI's customers (and who met attendance requirements) was paid his incentive rate of $9.50 for hours worked as a lumper and $10.50 per hour for time worked for GSI's customers.[12]  Ex. 1, App'x A at, e.g., DEF-002430.  To calculate his overtime rate, GSI first calculated his regular rate by dividing total non-overtime pay for the workweek by the number of hours worked in the workweek.  *Id.*  The lumper was then paid a half-time premium for any hours over 40.  *Id.*

For example, Plaintiff Carranzana, for the week ending May 2, 2014, worked a total of 46.5 hours, 40.5 as a lumper and 6 for a customer.[13]  Ex. 1, App'x A at DEF-002830.  The formula for Lumper Pay resulted in payment of $252.10 in Lumper Pay for the 40.5 hours.  *Id.* But Carranzana's incentive rate for lumper work was $9.25 an hour, and at $9.25 an hour he was

---

[10] This example is based upon a pay statement of Plaintiff Carlos Hernandez Sanchez.
[11] This example is based on a workweek of Plaintiff Osvaldo Ramirez Mendez from December 2011, when the Florida minimum wage was $7.31 per hour.
[12] This example is based upon a pay statement of Plaintiff Yoel Betancourt.
[13] On the pay statements, 6.5 hours reads as 6:30, which corresponds to 6 hours and 30 minutes.  This format is consistently used throughout the pay statements.

entitled to $374.63 in non-overtime pay for his 40.5 hours working as a lumper (40.5 hours X $9.25 per hour = $374.63).  *Id.*  Accordingly, he was paid $122.53 in supplemental Incentive Pay to bring his total pay for the lumper work to $374.63 ($252.10 + $122.53 = $374.63).  *Id.*  For his 6 hours working for the customer, he was paid non-overtime pay of $63.00 (6 hours X $10.50 per hour).  *Id.*  His total non-overtime compensation, then, was $437.63 ($374.63 + $63.00).  Ex. 1, App'x A.  His regular rate of pay for the workweek was $9.41, determined by dividing his total non-overtime compensation by his hours worked ($437.63/46.5 hours = $9.41).  *Id.*  For his overtime hours, he was entitled to and was paid an overtime premium of half that amount: $4.71 per hour.  *Id.*  For the 6.5 overtime hours, he was entitled to $30.62 (6.5 hours X $4.71) in overtime premium.  *Id.*  For the 46.5-hour workweek, the total compensation due – and the amount he was paid – was $468.25 ($437.63 in straight time pay plus $30.62 in overtime premium).  Ex. 1, App'x A.  Accordingly, he was properly paid at one-and-a-half times his regular rate for all overtime hours (and well above the minimum wage for all hours).

**C.      Every Plaintiff Was Paid Above the Minimum Wage for Every Hour Worked**

The Plaintiffs each received at least $9.00 per hour for all hours in every workweek they were employed, with the exception of the workweeks in which they were paid Make-up Pay. Ex. 1, ¶ 13.

During the period between April 30, 2011 and October 10, 2014,[14] there were 15 instances in which one of the Plaintiffs failed to meet the attendance requirements for payment at the incentive rate, and therefore was paid Make-up Pay during a workweek.  Ex. 1, ¶ 15.  In all

---

[14] In this action, GSI produced to the Plaintiffs all pay statements between this date range.

of those workweeks, the Plaintiffs were paid at or above the minimum wage.[15]  *Id.*  The

following is a complete list of the hourly rates for those workweeks:

Osvaldo Ramirez

> Week ending December 23, 2011: $7.31
> Week ending February 3, 2012: $7.671
> Week ending September 27, 2013: $7.85
> Week ending October 18, 2013: $7.85
> Week ending November 8, 2013: $7.85
> Week ending December 21, 2013: $7.85
> Week ending March 21, 2014: $7.93

Carlos Hernandez Sanchez

> Week ending February 22, 2013: $7.85
> Week ending September 27, 2013: $7.85
> Week ending January 3, 2014: $7.93
> Week ending March 28, 2014: $7.93
> Week ending May 9, 2014: $7.93

Roberto Gutierrez Carranzana

> Week ending August 23, 2013: $7.85

Heriberto Estrada

> No Make-up Pay weeks.

Jorge Calvario-Castro

> Week ending February 3, 2012: $7.67

Yoel Betancourt

> Week ending February 22, 2013: $7.85

*See* Ex. 1, ¶ 15; Ex. 1, App'x A at DEF-001400.

---

[15] Between January 1 and May 31, 2011, the Florida minimum wage was $7.25 per hour.  Between June 1 and December 31, 2011, the Florida minimum wage was $7.31 per hour.  Between January 1, 2012 and December 31, 2012, the Florida minimum wage was $7.67 per hour.  Between January 1, 2013 and December 31, 2013, the Florida minimum wage was $7.79 per hour.  Between January 1, 2014 and December 31, 2014, the Florida minimum wage as $7.93 per hour.  Since January 1, 2015, the Florida minimum wage has been $8.05 per hour.

There were no hours during the relevant period for which any of the Plaintiffs were paid less than minimum wage.  Ex. 1, ¶ 13.  Plaintiff Carranzana – the only Plaintiff who attended his scheduled deposition – testified that GSI always paid him at least the minimum wage.  *See* **Exhibit 2**, excerpt of March 11, 2015 Deposition of Roberto Gutierrez Carranzana, at 32:1-33:6.

**D.      Every Plaintiff Was Paid One and a Half Times His Regular Rate for All Overtime**

GSI's payment system provides that all hours over 40 are compensated at one-and-a-half times the regular rate.  Ex. 1, ¶ 14.  The Plaintiffs' regular rates varied by workweek depending on, among other things, the number of hours they worked.  *See* Ex. 1, ¶ 14; *see also* Ex. 1, App'x A.  However, the <u>method</u> of calculating the regular rate, described in Section II(B)(2), above, did not vary.  *Id.*  The Plaintiffs cannot present any evidence to the contrary.  In fact, the only Plaintiff who attended his scheduled deposition, Roberto Gutierrez Carranzana, admits that GSI calculated his overtime correctly.  *See* Ex. 2 at 33:8 – 38:21; *see also* Ex. 1, App'x A at Bates Nos. 2816-17.

**E.      Plaintiffs Did Not Work Off The Clock**

Alexandro ("Alex") Dominguez supervised the Plaintiffs throughout their employment with GSI.  *See* **Exhibit 3**, Affidavit of Alexandro Dominguez, at ¶¶ 1, 2, 3.  GSI's policies prohibit employees from performing work either before their clock-in time or after their clock-out time.  *Id.* at ¶ 4; *see also* Ex. 1 at ¶16.  GSI never asked the Plaintiffs to work off the clock. *Id.* at ¶ 5; *see also* Ex. 1 at ¶ 16.  Dominguez never observed any Plaintiff working off the clock, none of the Plaintiffs ever reported to Dominguez or GSI that they worked off the clock, and neither Dominguez nor GSI is aware of the Plaintiffs ever performing work off the clock.  Ex. 3 at ¶¶ 6, 7, 8; Ex. 1, ¶ 16.

Alex Dominguez's sworn affidavit establishes that GSI was not aware of any off-the-clock time, and Plaintiff Carranzana admitted at his deposition that he was paid for all hours he worked.  Ex. 2, 43:21-44:15; Ex. 3, ¶¶ 7-9; Ex. 1, ¶ 16.[16]  The Plaintiffs' generalized, unsworn allegations in the Complaint of off-the-clock work do not create a genuine issue of material fact.

**F.      GSI Never Agreed to Pay Plaintiffs Any Additional Pay Above Their Guaranteed Rate and Overtime Premium**

Alex Dominguez interviewed each of the Plaintiffs before they were hired.  Ex. 3, ¶ 10. During those interviews, Dominguez explained to each of the Plaintiffs that he would earn a guaranteed hourly rate starting at $9.00 an hour, plus overtime.  *Id.*  Dominguez did not promise any Plaintiff wages at a rate above their guaranteed incentive pay rate.  *Id.*  He did not promise any Plaintiff that he would receive incentive pay in addition to his guaranteed hourly rate.  *Id.*[17] And Dominguez did not promise any Plaintiff that he would receive anything more than his hourly rate plus overtime for time in excess of 40 hours in a workweek.  *Id.*

The Plaintiffs cannot identify any communication in which GSI agreed to pay them additional pay over and above their guaranteed hourly rate of pay, plus overtime, because GSI never made such a communication.  Ex. 1, ¶ 17; Ex. 3, ¶ 10; Ex. 2, 15:1-20:25.  To the extent the Plaintiffs believed that they were owed additional compensation, Carranzana testified that such a belief was not attributable to any statements from GSI, but rather, to statements from one another or other co-workers.  Ex. 2, 53:6 – 63:9.

---

[16] The Dominguez affidavit is sufficient for entry of summary judgment on any claim of off the clock work. Additional support arises from Carranzana's testimony, and the fact that none of the other Plaintiffs attended their scheduled depositions despite a Court order requiring them to comply with the Rules, and therefore the Court should direct that it be taken as established that they, too, did not work any off-the-clock time.  *See* Fed. R. Civ. P. 37(b)(2)(A)(i).

[17] As explained above, "incentive pay" is a term used at GSI to refer to the an amount paid to supplement "lumper pay," when lumper pay alone would be less than the guaranteed incentive rate paid in weeks when attendance guidelines are met.

# III.

# MEMORANDUM OF LAW

**A.    The Court Should Grant Summary Judgment to GSI on Plaintiff's FLSA Claims**

    **1.    Legal Standard**

Plaintiffs bear the burden of proof by a preponderance of the evidence that GSI failed to properly compensate them for their work.  *See Olson v. Star Lift, Inc*., 709 F. Supp. 2d 1351, 1356 (S.D. Fla. 2010) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) and *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 (11th Cir. 1982).  Because Plaintiffs, the non-moving parties, bear the burden of proof at trial, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against [them if they] fail[] to make a showing sufficient to establish the existence of an element essential to th[eir] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  GSI is not required "to support its motion with affidavits or other similar material *negating* the[ir] claim."  *Id.* at 323 (emphasis in original).  Rather, GSI may discharge its burden by showing the Court that there is an absence of evidence to support Plaintiffs' case. *Id.* at 324.  Once GSI discharges its initial burden, the Plaintiffs must "go beyond the pleadings and by [their] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).  Plaintiffs may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).

Further, Plaintiffs are not permitted to stonewall GSI in discovery (*see* Doc. 52) and then ambush GSI with affidavits in opposition to summary judgment.  Plaintiffs refused to serve any responses (answers or objections) to interrogatories.  (*See* Doc. 52).  They refused to serve any responses (answers or objections) to requests for production.  *Id.*  On February 23, 2015, the

Court entered an Order directing Plaintiffs to comply with applicable rules and Court Orders, including the Federal Rules of Civil Procedure.  (Doc. 35).  Thereafter, each of the Plaintiffs, with the exception of Mr. Carranzana, refused to appear and testify at duly-noticed depositions – and Mr. Carranzana's deposition testimony supports entry of summary judgment in favor of GSI.

In similar circumstances, courts have agreed that affidavits submitted in opposition to summary judgment should be stricken.  For example, in *Gen'l Motors Corp. v. Local 599*, the "plaintiff failed to appear for a deposition following an order by the court obligating him to do so."  774 F.2d 1162 (6th Cir. 1985) (unpublished).  The Court of Appeals held that it was "eminently appropriate" for the district court to order "that plaintiff not be allowed to submit his affidavit either in support of, or in opposition to, any summary judgment motions."  *Id.* (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)).

The Middle District of Florida addressed a similar situation in *S.E.C. v. BIH Corp.*  No. 2:10–cv–577–FtM–29DNF, 2013 WL 6571472, at *1-3 (M.D. Fla. Dec. 13, 2013).  There, at their depositions, one of the defendants and a witness for the defendants refused to answer questions based on the Fifth Amendment privilege against self-incrimination.  *Id.* at *1-3.  In opposition to summary judgment, the defendants proffered sworn statements from the two, addressing matters they had refused to testify about at deposition.  *Id.* at *1.  The court first noted that by proffering the sworn statements the defendant and his witness had effectively withdrawn their claims of privilege.  *Id.* at *2.  Then, noting the "significant disadvantage because of increased costs, delays, and the need for a new investigation" that is caused to an opposing party when one refuses to address a matter at deposition and then proffers an affidavit on the matter in opposition to summary judgment, the court struck the sworn statements.  *Id.* at *3.  *See also Palm Beach Strategic Income, LP v. 358 1276 Canada Inc.*, No. 08–80186–CIV, 2009 WL

11

7466346, at *2-4 (S.D. Fla. Feb. 10, 2009) (striking affidavit proffered in opposition to summary judgment based on failure to appear for deposition and noncompliance with court orders).

As explained above, Plaintiff Carranzana's deposition testimony supports summary judgment, as he testified that he was always paid at least minimum wage, his overtime pay was calculated properly, and he was paid for all hours he worked.  The other Plaintiffs should not be allowed to proffer affidavits in opposition to summary judgment because they have deprived Defendant of the opportunity to develop evidence through discovery, as all failed and refused to respond to written discovery, and all failed to attend their duly noticed depositions.  Accordingly, and as explained more fully below, there is no genuine dispute of material fact, and summary judgment should be entered in favor of GSI.

### 2.        Plaintiffs' Claims for Unpaid Overtime Fail as a Matter of Law

Section 207(a) of the FLSA provides, in relevant part, that:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

In a workweek when an employee's only straight time pay is hourly pay at a single nonovertime rate of pay, the "regular rate" is the hourly rate.  *Walling v. Youngerman-Reynolds Hardwood Co.* (1945); *see also* 29 C.F.R. § 778.108.  For weeks in which an employee works "two or more different types of work for which different nonovertime rates of pay . . . have been established, his regular rate for that week is the weighted average of such rates."  29 C.F.R. § 778.115.

Accordingly, for weeks in which a Plaintiff worked solely as a lumper, (when his straight time pay was at a single hourly rate), the Plaintiff was entitled to be paid his hourly rate for the

first 40 hours of work, and one-and-a-half times his hourly rate for any hours over 40.  That is exactly what each received.  *See* Ex. 1, ¶ 11; Ex. 1, App'x A.  For weeks in which a Plaintiff worked both as a lumper and performed separate work for GSI's customer, he was entitled to receive his hourly "incentive rate" for all lumper hours,[18] the Pass Through Pay rate (typically $10.50 per hour) for all hours worked on behalf of GSI's customer, and overtime pay for hours over 40 based on a regular rate calculated as the weighted average of the two hourly rates.  That is exactly what they received.  *See* Ex. 1, ¶ 12; Ex. 1, App'x A.  Therefore, Plaintiffs were paid all overtime they were owed for all their recorded hours.

Given the undisputed facts described above, the only basis on which Plaintiffs could still contend that they are owed overtime pay is if they were entitled to be paid for off-the-clock hours they worked, in a week in which they worked over 40 hours, and were not compensated for those hours.  But for Plaintiffs to be entitled to be paid overtime pay for off the clock work, they must show not only that they worked overtime hours without compensation, but also that GSI knew or should have known of their overtime work.  *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946), *superseded by statute on other grounds,* Portal-to-Portal Act of 1947, 29 U.S.C. § 216 (b); *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007).  There is no competent <u>evidence</u> that any Plaintiff worked any off-the-clock hours, and certainly no evidence that GSI knew or should have known of off the clock work.  Plaintiffs' supervisor, Alexandro Dominguez, has stated in an affidavit that he never asked the Plaintiffs to work off the clock, never observed them working off the clock, and that Plaintiffs never reported to him that they worked off the clock.  *See* Ex. 3, ¶¶ 7, 8,9.  Moreover, GSI has no record of the Plaintiffs having reported that they worked off the clock, and no record that any of

---

[18] Or the "Make-up Pay" hourly rate if he failed to meet attendance requirements.

them complained about working off the clock without pay, other than the unsworn allegations in the Complaint.[19]  *See* Ex. 1, ¶16; Ex. 3, ¶ 9.

Still further, the only Plaintiff who appeared for deposition testified that his overtime pay was calculated properly and that he was paid for all hours he worked.  In light of the foregoing, there is no genuine issue of material fact and GSI is entitled to summary judgment on Plaintiffs' claims for failure to pay overtime under the FLSA.

### 3.    Plaintiffs' Minimum Wage Claims Fail as a Matter of Law

The FLSA requires that qualifying employers pay their employees at or above the minimum wage for all hours worked.  29 U.S.C. § 206(a).  An employer satisfies its minimum wage obligation by paying, for a workweek, an amount that exceeds the product of the number of hours worked times the applicable minimum wage.  *Walters v. Am. Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1300 (S.D. Fla. 2008), *aff'd*, 575 F.3d 1221 (11th Cir. 2009) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363–64 (1945)) (some internal citations omitted).

For the vast majority of weeks during their employment, GSI paid all of the Plaintiffs a minimum guaranteed hourly rate of at least $9.00 per hour, substantially <u>above</u> minimum wage. Ex. 1, ¶ 7.  For the few weeks during the relevant period in which any of the Plaintiffs had unexcused attendance violations, GSI paid the plaintiffs at least the minimum wage.  Ex. 1, ¶ 7. Plaintiffs cannot point to any evidence to the contrary.

Carranzana, the only Plaintiff who appeared for deposition, testified that he was always paid at least minimum wage.  To the extent that Plaintiffs claim in the Complaint that they worked off-the-clock, and such alleged work resulted in their being paid less than the minimum

---

[19] Notably, the Plaintiffs did not allege that they worked off-the-clock in the original Complaint, but later amended the Complaint – five months after the Complaint was filed and after GSI provided sworn Interrogatory responses refuting Plaintiffs' allegations of overtime and minimum wage violations – to add off-the-clock allegations.  *See* Doc. 2, Doc. 17.

wage, their unsworn allegations, without more, are insufficient to create a genuine issue of material fact.  *See* Section II(B)(2), *supra.*

In light of the foregoing, GSI is entitled to summary judgment on Plaintiffs' claims for failure to pay minimum wage under the FLSA.

**B.     The Court Should Grant Summary Judgment To GSI on Plaintiffs' Claims for Unpaid Wages**

To state a claim for unpaid wages under Florida common law, Plaintiffs must establish that there are wages they are owed that GSI has not paid to them.  *See, e.g.*, *Coleman v. City of Hialeah*, 525 So. 2d 435, 436-37 (Fla. 3d DCA 1988).  Plaintiffs have not even pled, and cannot assert, the existence of any contract of employment with GSI, nor the existence of any other agreement in which GSI promised them any compensation beyond what GSI actually paid them. *See Broward Builders Exch., Inc. v. Goehring*, 231 So. 2d 513, 514 (Fla. 1970) ("[I]t is difficult to conceive of a claim for wages which does not in some manner arise from a contract expressed or implied.").  This is because GSI did not reach any agreement with the Plaintiffs to pay them any compensation beyond their guaranteed hourly rate, plus overtime.  Ex. 1, ¶16; Ex. 3, ¶ 10. Accordingly, GSI is entitled to summary judgment on Plaintiffs' claim for unpaid wages under Florida common law.

## IV.

## CONCLUSION

Plaintiffs brought a three-count Complaint against GSI, alleging that GSI owes them unpaid overtime and unpaid wages under the FLSA, and unpaid wages under Florida common law.  As set forth above, GSI (1) paid Plaintiffs time-and-a-half their regular rate for all overtime hours; (2) never paid Plaintiffs less than the minimum wage; and (3) paid Plaintiffs all the wages

to which they were entitled.  There are no genuine issues of material fact as to Plaintiffs' claims, and GSI therefore is entitled to judgment as a matter of law.

WHEREFORE, Defendant General Services of VA, Inc. respectfully requests that the Court enter an Order granting the Defendant summary judgment on all claims of plaintiffs Yoel Betancourt, Carlos Hernandez, Osvaldo Ramirez Mendez, Jorge Calvario-Castro, Heriberto Estrada, and Roberto Gutierrez Carranzana.

Respectfully submitted,

By:   /s/ Ashwin R. Trehan
Todd S. Aidman
Florida Bar No. 0173029
taidman@fordharrison.com
Ashwin R. Trehan
Florida Bar No. 0042675
atrehan@fordharrison.com
Shane T. Muñoz
Florida Bar No. 067024
smunoz@fordharrison.com

FORD & HARRISON LLP
101 E. Kennedy Boulevard, Suite 900
Tampa, Florida  33602-5133
Telephone:  (813) 261-7800
Facsimile:  (813) 261-7899

Attorneys for Defendant General Services of VA, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2015, I filed the foregoing through the CM/ECF

system, which will send a notice of electronic filing to:

Luis A. Cabassa
Brandon J. Hill
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue, Suite 300
Tampa, Florida  33602

Cynthia M. Gonzalez
Cynthia Gonzalez, P.A.
6301 Memorial Hwy., Suite 301
Tampa, FL  33615

and that I served the foregoing by U.S. Mail to the following:

Carlos Hernandez
7140 Parrot Drive
Port Richey, FL  34668

Heriberto Estrada
901 W. Gaston Place
Tampa, Florida  33604

Jorge L. Calvario
3314 Carlton Arms Drive, #54-T
Tampa, FL  33614

Osvaldo Ramirez Mendez
4733 W. Waters Avenue, Apt. 615
Tampa, FL  33614

Roberto Gutierrez Carranzana
3215 E. Paris Street
Tampa, FL  33610

Yoel Betancourt
10116 Lazy Creek Court, Apt. 705
Tampa, Florida  33615-2668

/s/ Ashwin R. Trehan
Attorney

WSACTIVELLP:7487138.1

17