UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YOEL BETANCOURT, et al.,

              Plaintiffs,

v.                              CASE NO.  8:14-CV-1219-T-17MAP

GENERAL SERVICES OF VA,
INC.,

              Defendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 65   Amended Motion for Summary Judgment
Dkt. 68   Order Directing Response
Dkt. 77   Motion for Sanctions, Including Dismissal of Plaintiff's Claims
Dkt. 80   Motion for Dispositive Motion for Judgment
Dkt. 82   Motion to Strike Motion (Dkt. 80)
Dkt. 83   Motion to Strike Notice (Dkt. 81)
Dkt. 84   Motion for Clarification of Order (Dkt. 78)
Dkt. 85   Response to Motion (Dkt. 84)
Dkt. 86   Response to Motion (Dkt. 83)
Dkt. 87   Response to Motion (Dkt. 82)
Dkt. 89   Notice

Dkt. 84   Motion for Clarification of Order (Dkt. 78)
Dkt. 85   Response
Dkt. 89   Notice

Movant Roberto Gutierrez moves for clarification, and asserts that he has received Court Orders and other documents related to this case, to which Movant Gutierrez is not a party.

Case No. 8:14-CV-1219-T-17MAP

Defendant General Services of VA, Inc. responds that, upon learning of the misidentification of Movant, Defendant has ceased all communication with Movant and has delivered all papers, pleadings and correspondence to the correct Plaintiff, Roberto Gutierrez Carranzana.

The Court notes that the name and address of the correct Plaintiff is reflected in Plaintiff Roberto Gutierrez Carranzana's Consent to Join, Dkt. 11-1, pp. 4-5. After consideration, the Court **grants** Movant's Motion for Clarification only to confirm that Court Orders and other papers were mistakenly sent to Movant Roberto Gutierrez instead of Plaintiff Roberto Gutierrez Carranzana, and the error has now been corrected.

Dkt. 83   Motion to Strike Notice (Dkt. 81)
Dkt. 86   Response

Defendant moves to strike Plaintiffs' Notice (Dkt. 81), because it is incomprehensible, such that Defendant cannot respond to the Notice, and it is not designated as a motion or a pleading.

Plaintiffs oppose Defendant's Motion.

The Court has reviewed Plaintiff's Notice (Dkt. 81). The Court holds pro se pleadings to a less stringent standard than those drafted by attorneys, and must liberally construe such pleadings; pro se litigants are, however, required to conform to procedural rules, including the Local Rules of the Middle District of Florida, and the Federal Rules of Civil Procedure. Plaintiff's Notice may be a request for review of a Court Order (Dkt. 78), which granted Defendant's Motion for Determination of Reasonable Expenses (Dkt. 76), or it may be a request for Defendant to confer with Plaintiffs in order to resolve this case through settlement, since Defendant resolved the

2

Case No. 8:14-CV-1219-T-17MAP

claims with represented Plaintiffs through settlement. The Notice refers to both issues. The Court found it very difficult to understand what Plaintiffs intended to communicate.

After consideration, the Court **denies** Defendant's Motion to Strike. Since the Court could not understand what relief Plaintiffs were seeking by filing the Notice, any request for relief in the Notice is denied.

Dkt. 80    Motion for a Dispositive Motion for Judgment
Dkt. 82    Motion to Strike Motion (Dkt. 80)
Dkt. 87    Response

Defendant moves to strike Plaintiffs' Motion because it is incomprehensible, such that Defendant cannot respond to the Motion.

Plaintiffs oppose Defendant's Motion to Strike.

Plaintiffs have previously sought to voluntarily dismiss their claims without prejudice. The Court has denied Plaintiffs' Motions. (Dkts. 61, 74).

On April 20, 2015, the Court directed Plaintiffs to respond to Defendant's Amended Motion for Summary Judgment (Dkt. 65) by May 4, 2015 (Dkt. 68). On May 22, 2015, the assigned Magistrate Judge directed Plaintiffs to make themselves available for deposition, and directed Plaintiffs to respond to the pending summary judgment motion within seven days (Dkt. 74), specifically notifying Plaintiffs that a failure to respond would be interpreted as no opposition to the motion, and a judgment would be entered against that Plaintiff and in favor of Defendant. The Order further granted Defendant's request for the award of reasonable expenses incurred for Plaintiffs' failure to attend their scheduled depositions.

3

Case No. 8:14-CV-1219-T-17MAP

On May 29, 2015, Plaintiffs filed their Response (Dkt. 75) to the Court's Order (Dkt. 74). The Response is, in part, a response to Defendant's request for the award of attorney's fees for Plaintiffs' failure to attend their depositions. Plaintiffs state, in general terms, that decisions adverse to Plaintiffs have been made because Plaintiffs are proceeding pro se, and not on the basis of submitted evidence, such as pay stubs, payment of overtime, method of payment, and dismissal letters without advance notice, and if Plaintiffs were represented, this case would have taken a different course.

Plaintiffs each executed a "Consent to Join" this case. The Court entered a Case Management and Scheduling Order (Dkt. 10) in 2014 which imposed deadlines and controls the progress of this case; that Order applies to both Plaintiffs and Defendant. The Court previously advised Plaintiffs that there are resources available on the Court's website which are intended to assist pro se parties, but a pro se party is required to comply with the Local Rules of this district, the Federal Rules of Civil Procedure, and the Court's orders, including the Case Management and Scheduling Order. (Dkt. 35).

Plaintiffs state, in general terms, that Plaintiffs intend to pursue their claims against Defendant, that Plaintiffs "do not have problems to go to any deposition, or request mediation order of the same federal court in tampa florida,....have no objection to any interview prepared in future destination for interrogation to clarify any questions by the defendant." (Dkt. 75, p. 7). Plaintiffs were previously directed to make themselves available for deposition in this case, and to respond to the pending motion for summary judgment (Dkt. 68).

The Court has reviewed Plaintiffs' Motion (Dkt. 80). The Court does not understand why Plaintiffs attached a copy of the Motion to Dismiss filed in another case to Plaintiffs' Motion. Plaintiffs indicate that Plaintiffs have provided pay stubs, receipts and other documents to the Court in support of their claims, and Plaintiffs refer to the

4

Case No. 8:14-CV-1219-T-17MAP

fact that Defendant reached a settlement with other named Plaintiffs who were represented by counsel.

The Court has repeatedly directed Plaintiffs to respond to Defendant's Amended Motion for Summary Judgment (Dkt. 65). If Plaintiffs had documents (pay stubs, letters, affidavits, depositions or other documents) supporting each Plaintiff's claim, Plaintiffs have had the opportunity to establish the presence of material disputed issues of fact as to the claims Plaintiffs are pursuing, by filing their Responses to Defendant's Amended Motion for Summary Judgment. The Court has examined the record, but Plaintiffs' Responses do not include pay stubs or other evidence supporting Plaintiffs' claims.

After consideration, the Court **denies** Defendant's Motion to Strike. Because the Court cannot understand what relief Plaintiffs are seeking, any request for relief in Plaintiffs' Motion (Dkt. 80) is **denied**.

Dkt. 65    Amended Motion for Summary Judgment

The Court incorporates the exhibits attached to Defendant's Motion for Summary Judgment (Dkt. 63) by reference. These include: 1) Affidavit of Kimberly Clem; 2) Deposition of Roberto Gutierrez Carranzana; and 3) Affidavit of Alexandro Dominguez.

The Second Amended Complaint (Dkt. 19) includes the following claims:

Count I        FLSA Overtime Violations
Count II       FLSA Minimum Wage Violations
Count III      Common Law Unpaid Wages Violation

In Count I, Plaintiffs demand judgment for unpaid back wages at the applicable overtime rate; a judgment that the FLSA violations were willful; an equal amount to the overtime damages as liquidated damages; to the extent liquidated damages are not

5

Case No. 8:14-CV-1219-T-17MAP

awarded, the award of prejudgment interest, and the award of all costs and attorney's
fees incurred in prosecuting the claims.  In Count II, Plaintiffs demand judgment for an
amount equal to Plaintiffs' unpaid back wages at the applicable minimum wage rate; a
judgment that the FLSA violations were willful; an equal amount for unpaid minimum
wages as liquidated damages; to the extent liquidated damages are not awarded, the
award of prejudgment interest; and the award of all costs and attorney's fees incurred in
prosecuting the claims.  As to Count III, Plaintiffs demand a jury trial, a judgment for an
amount equal to Plaintiff's unpaid back wages, and the award of costs and attorney's
fees pursuant to Sec. 448.08, Florida Statutes.

   In the Answer (Dkt. 21), Defendant General Services of VA, Inc. admits that
Plaintiffs were engaged in the production of goods for commerce within the meaning of
Sections 6 and 7 of the FLSA, and subject to the individual coverage of the FLSA, that
Plaintiffs were Defendant's employees, and that at all material Defendant was an
employer with the meaning of the FLSA.

   Defendant's Amended Motion for Summary Judgment is directed to the following
Plaintiffs:    Yoel Betancourt, Carlos Hernandez, Osvaldo Ramirez Mendez, Jorge
Calvario-Castro, Heriberto Estrada, and Roberto Gutierrez Carranzana.[1]  ("Plaintiffs").

   The Court's Case Management and Scheduling Order (Dkt. 10) specifies
summary judgment procedures.  Defendant has included a Statement of Undisputed
Facts within the Amended Motion for Summary Judgment.  Plaintiffs have not filed
Statements of Disputed Facts which contravert Defendant's Statement of Undisputed
Facts.  Therefore, the undisputed facts are deemed admitted.  The Court has attached
Defendant's Statement of Undisputed Facts to this Order for reference (Exhibit 1).

_____

   [1]Plaintiff's Consent to Join (Dkt. 11-1, pp. 4-5) shows "Roberto Gutierrez
Carrazana."

6

Case No. 8:14-CV-1219-T-17MAP

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of
> summary judgment after adequate time for discovery and
> upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the
> burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

If the moving party does not bear the burden of proof at trial, it satisfies its initial burden on summary judgment by either of two methods: 1) producing affirmative evidence negating a material fact that is necessary to the non-movant's case, demonstrating that the non-moving party will be unable to prove its case at trial, or 2) by affirmatively showing the absence of evidence in the record to prove a fact necessary to the non-movant's case, and... to support a judgment for moving party on the issue in question. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-1116 (11th Cir. 1993). If the moving party uses the first method, the non-moving party "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. at 1116. If the second method is used, the non-moving party may either demonstrate that the record contains evidence that was "overlooked or ignored" by the movant, or by "com[ing] forward with additional evidence sufficient to withstand a directed verdict at trial, based on the alleged evidentiary deficiency. Id.

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

7

Case No. 8:14-CV-1219-T-17MAP

248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

II. Discussion

The Court notes that Plaintiffs did not serve responses to the interrogatories propounded to Plaintiffs by Defendant, and did not serve responses to the requests for production propounded to them. Only Plaintiff Roberto Gutierrez Carranzana appeared for his deposition (Dkt. 63-2).

In the Second Amended Complaint, in addition to the overtime and unpaid wage claims, Plaintiffs allege a fraudulent pay scheme, in which Plaintiffs allege that when Plaintiffs were hired, Plaintiffs were promised they would be paid at an hourly rate between $9.00 and $12.00 per hour, plus commissions, incentive pay for meeting certain attendance and performance requirements, and overtime. Plaintiffs further allege that the pay stubs provided are misleading, and in fact Plaintiffs received nothing more than an hourly wage that was less than promised, and at times less than the minimum wage. Plaintiffs allege that the pay stubs do not identify how Defendant calculated Plaintiffs' overtime compensation, do not accurately reflect all hours worked, or provide a breakdown as to how compensation was calculated and paid. Plaintiffs further allege that Defendants did not keep accurate records as required by law, and have not provided Plaintiffs with basic information on how their pay is calculated. (Dkt. 19, p. 4).

Case No. 8:14-CV-1219-T-17MAP

The Court notes that Defendant produced all pay statements for the time period between April 30, 2011 and October 10, 2014 to Plaintiffs. The Court further notes that authority to enforce the FLSA's record-keeping provisions is vested exclusively with the Department of Labor. See Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d 832, 843-44 (6th Cir. 2002); Powell v. Florida, 132 F.3d 677, 678 (11th Cir.), cert. denied, 524 U.S. 916 (1998)(noting that Secretary has exclusive authority to bring suit under Sec. 217).

A. Count I - FLSA Overtime Violations

In Count I Second Amended Complaint, Plaintiffs allege that Defendant has deprived Plaintiffs of overtime to which Plaintiffs are entitled.

An employee bringing a claim for unpaid overtime wages must initially demonstrate that he performed work for which he was not properly compensated. See, e.g. Anderson v Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946), superseded by statute, Portal to Portal Act of 1947; 29 U.S.C. 216(b); however, the burden-shifting formulation is still used to sort out evidentiary issues related to determinations of unpaid wages. See Rossi v. Associated Limousine Servs., Inc., 438 F.Supp.2d 1354, 1365 (S.D. Fla. 2006). In a case where accurate records or precise evidence of an employee's hours worked do not exist, an employee carries his burden (1) if he proves that he had in fact performed work for he was improperly compensated; and (2) if he produces sufficient evidence to show the amount and extent of such work. Id. Once the employee makes a prima facie case by producing such evidence, the burden shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence. See Anderson v. Mt. Clemens Pottery Co., supra. If the employer fails to meet this burden, the Court may award approximate damages based upon the evidence adduced by the employee.

Case No. 8:14-CV-1219-T-17MAP

Defendant argues that Plaintiffs' claims for unpaid overtime fail as a matter of
law. Defendant asserts that Plaintiffs have been paid all the overtime pay to which
Plaintiffs are entitled for all their recorded hours. In a workweek in which a Plaintiff
worked only as a lumper, and received hourly pay at a single nonovertime rate, the
employee was paid for overtime at a rate which was one and a half times the
employee's "regular" rate, in accordance with 29 U.S.C. Sec. 207(a)(1). In a workweek
in which a Plaintiff worked as a lumper and also performed work for Defendant's
customer, the employee was paid the "incentive rate" for all lumper hours, the "Pass
Thru Pay Rate" for all hours worked for Defendant's customer, and overtime pay for
hours over 40 based on a regular rate calculated as the weighted average of the two
hourly rates, in accordance with 29 C.F.R. Sec. 778.115.

A.    How Defendant Calculates Overtime

The Affidavit of Kimberly Clem, Business Manager, explains Defendant's
payment scheme for "lumpers," the employees who unload trucks. Lumpers are paid
"incentive rates" for non-overtime hours; the incentive rate is intended to reward an
employee's attendance which meets established guidelines. In any workweek in which
an employee does not meet attendance guidelines, the employee is paid a non-
overtime rate at least equal to the applicable minimum wage.

On each paycheck, for non-overtime pay, an employee's incentive rate is broken
down into components, including: 1) "Lumper Pay," an amount allocated to each
employee based on amounts Defendant charges its customers for unloading services;
2) "Incentive Pay," an amount which supplements "Lumper Pay" to bring the employee's
hourly rate up to the incentive rate; and 3) "Make-up Pay," which is applicable only in
weeks in which an employee has an attendance violation, in an amount which ensures
the employee receives at least the minimum wage during the week of the attendance
violation. Another form of non-overtime pay is "Hourly Pass Thru Pay," which is a

10

Case No. 8:14-CV-1219-T-17MAP

separate hourly rate paid by Defendant to lumpers for work, separate from their
unloading work, that they occasionally perform for Defendant's customers. During the
relevant time period, the hourly rate for this work was typically $10.50 per hour.

Defendant pays lumpers overtime pay for all time worked in excess of 40 hours
in a workweek, at the rate of time-and-a-half the regular rate. As to lumpers who did
not perform any work for Defendant's customers, the overtime calculation is the
incentive rate for the first 40 hours, and one and a one-half times the incentive rate for
time in excess of 40 hours. As to lumpers who performed work for Defendant's
customers, and who met attendance guidelines, the lumper was paid his incentive rate
for hours worked as a lumper and, typically, $10.50 an hour for time worked for
Defendant's customers. To calculate the overtime rate, Defendant calculated the
regular rate by dividing total, non-overtime pay for the workweek by the number of
hours worked in the workweek. The lumper was then paid a half-time premium for any
hours over 40, so that the lumper was paid at least one-and-one-half times his regular
rate for all overtime hours.

Defendant has provided a sampling of wage records for all Plaintiffs during the
applicable time period (Dkt. 63-1, pp. 7-20). Defendant has identified the hourly rate
paid to each Plaintiff for each workweek in which that Plaintiff did not meet attendance
requirements, if any, (from April 30, 2011 to October 10, 2014)(Dkt. 63-1, pp. 4-5, Dkt.
65, p. 7), and therefore was paid "Make-up Pay"during that workweek. Defendant
asserts that each Plaintiff received at least $9.00 per hour in every workweek for which
Plaintiffs were employed, except for workweeks in which each Plaintiff was paid "Make-
up Pay." During those specified workweeks, each Plaintiff was paid at or above the
minimum wage.

11

Case No. 8:14-CV-1219-T-17MAP

The Court notes the following minimum wage rates:

| | |
|---|---|
| 1/1/2011 - 5/31/2011 | $7.25/hr |
| 6/1/2011 - 12/31/2011 | $7.31/hr |
| 1/1/2012 - 12/31/2012 | $7.67/hr |
| 1/1/2013- 12/31/2013 | $7.79/hr |
| 1/1/2014- 12/31/2014 | $7.93/hr |
| 1/1/2015- present | $8.05/hr |

Defendant's payment system provides that all hours over 40 are compensated at one and one-half times the employee's regular rate. Each Plaintiff's regular rate could vary from workweek to workweek, depending on various factors, but Defendant's method of calculating the regular rate for each Plaintiff did not vary.

The Court has examined the pay stubs that are attached to the Clem Affidavit. With the aid of Defendant's explanation, the Court understands how Defendant calculated the overtime rate for overtime paid to Plaintiffs in both factual scenarios, a workweek in which an employee worked solely as a lumper, and a workweek in which an employee performed work as a lumper and for Defendant's customer at a different rate. The pay stubs show that Plaintiffs were in fact paid for overtime worked at the appropriate rate.

The Court notes that the only Plaintiff who appeared for deposition, Roberto Gutierrez Carranzana, admitted that overtime was correctly calculated on the two pay stubs shown to Plaintiff at his deposition, 2816 (Dkt. 63-1, p. 8) and 2817 (Dkt. 63-1, p. 9).

This is not a case in which the employer was unable to produce records of the amount and extent of the work Plaintiffs performed. Plaintiffs allege overtime violations, but have not produced any evidence to support their allegations. As to the overtime claims, Plaintiffs have not met their initial burden to establish that Plaintiffs performed

12

Case No. 8:14-CV-1219-T-17MAP

work for which Plaintiffs were not properly compensated.

B. Off-The- Clock Hours

In the Second Amended Complaint (Dkt. 19), Plaintiffs allege that Plaintiffs routinely worked "off-the-clock" but were not compensated, including while getting ready for work prior to clocking in at Defendant's facility, moving pallet jacks into place, and completing other mandatory pre- and post-shift tasks. (Dkt. 19, p. 4).

In his deposition, Plaintiff Roberto Gutierrez Carranzana denied that there were hours for which Plaintiff was not paid. (Dkt. 63-2, p. 16).

Defendant asserts that Defendant's policies prohibit working before clocking in or after clocking out. Defendant has provided the affidavit of Alexandro Dominguez, who supervised Plaintiffs during their employment with Defendant. In the affidavit, Alexandro Dominguez states that none of the Plaintiffs reported that Plaintiffs worked off the clock, or complained about having worked off the clock. Alexandro Dominguez further asserts that he never asked any of the Plaintiffs to work off the clock.

Defendant has denied actual knowledge that employees worked "off-the-clock," supported by uncontroverted evidence.

Plaintiffs have not established a prima facie case that Plaintiffs routinely worked "off-the-clock" such that Defendant would have had constructive knowledge of any such work if Defendant was diligent about enforcing its policy of no work before clocking in and no work after clocking-out. See Allen v. Bd. of Pub. Educ. For Bibb Cty., 495 F.3d 1306, 1314 (11th Cir. 2007). Plaintiffs have not filed time sheets, schedules, affidavits or other documents identifying specific dates, and specific amounts of time for which Plaintiffs contend Plaintiffs have not been paid, or the amount of money that Plaintiffs

Case No. 8:14-CV-1219-T-17MAP

contend is due for the work performed.

Plaintiffs have neither pointed out record evidence that was ignored or overlooked by Defendant, or come forward with additional evidence sufficient to withstand a directed verdict at trial. The Court therefore grants Defendant's Amended Motion for Summary Judgment as to Count I.

B. Count II - FLSA Minimum Wage Violations

The FLSA requires that a qualifying employer pay its employees at or above the minimum wage for all hours worked. See 29 U.S.C. Sec. 206(a). An employer satisfies its minimum wage obligation by paying, for a workweek, an amount that exceeds the product of the numbers of hours worked times the applicable minimum wage. See Walters v. Am. Coach Lines of Miami, Inc., 569 F.Supp.2d 1270, 1300 (S.D. Fla. 2008), aff'd, 575 F.3d 1221 (11th Cir. 2009).

Defendant moves for summary judgment on Plaintiffs' claim that Defendant did not compensate them at or above the minimum wage.

Defendant has identified the specific workweeks in which each Plaintiff was paid at or above the minimum wage. All workweeks in which a Plaintiff was paid an "incentive rate" was a workweek in which the employee was paid at a rate above the minimum wage. Defendant has identified the workweeks in which each Plaintiff did not meet attendance requirements, and was paid "Make-Up Pay" to supplement that Plaintiff's basic rate of pay, to bring the Plaintiff's regular rate for that week up to the applicable  minimum wage rate.

Case No. 8:14-CV-1219-T-17MAP

Plaintiffs have neither pointed out record evidence that was ignored or overlooked by Defendant, or come forward with additional evidence sufficient to withstand a directed verdict at trial. The Court therefore grants Defendant's Amended Motion for Summary Judgment as to Count III.

C.  Count III - Common Law Unpaid Wage Violations

In Count III, Plaintiffs allege that Defendant did not compensate Plaintiffs for all "wages" owed to them, including commissions, bonuses, incentive pay and hourly wages owed, when Defendant did not pay Plaintiffs the difference between their actual hourly rate and the minimum wage.

As noted above, Plaintiffs were not necessarily paid the same rate each week. Defendant paid Plaintiffs an "incentive rate" if the employee met established attendance standards in a given week or other factors, or paid at least the minimum wage if established attendance standards were not met.

Plaintiffs allege that Plaintiffs were owed commissions and bonuses which Defendant has not paid.

In his deposition, Plaintiff Roberto Gutierrez Carranzana testified no one from management told him that Defendant would pay commission, backhaul and incentive. (Dkt. 63-2, pp. 19-22).

Defendant denies that Defendant promised Plaintiffs that they would receive additional pay over and above the guaranteed incentive rate, plus overtime.  Defendant promised Plaintiffs that Plaintiffs would earn a guaranteed hourly rate starting at $9.00/hour, plus overtime, for weeks in which Plaintiffs met attendance guidelines, the "incentive rate," and otherwise compensated Plaintiffs at a nonovertime rate at least

Case No. 8:14-CV-1219-T-17MAP

equal to the applicable minimum wage. Defendant has explained that the "Incentive Pay" which appears on the pay stubs for each Plaintiff is a supplement to the basic rate which brings a Plaintiff's nonovertime hourly rate up to the "incentive rate."   Defendant has produced the affidavits of Kimberly Clem, Business Manager, and Alexandro Dominguez, Supervisor, in support.

Plaintiffs have neither pointed out evidence in the record that Defendant has overlooked, or come forward with evidence sufficient to withstand a directed verdict at trial as to Count III.  The Court therefore grants Defendant's Amended Motion for Summary Judgment as to Count III.

Defendant has moved for sanctions (Dkt. 77), including dismissal of Plaintiffs' claims, pursuant to Fed. R. Civ. P. 41(b), 37(B)(2) and 37(d)(1)(A).  The Court notes that the Court previously imposed monetary sanctions for failure to attend scheduled deposition, and after that Order, Plaintiffs refused to comply with Court Orders and applicable rules by failing to appear for deposition.  Plaintiffs did not file a response to the Amended Motion for Summary Judgment that specifically addressed the issues raised in the motion.  Because the Court has granted Defendant's Amended Motion for Summary Judgment, the Court denies Defendant's Motion for Sanctions as moot. Accordingly, it is

**ORDERED** that:

1. Motion for Clarification of Order (Dkt. 84) is **granted**;

2. Motion to Strike Notice (Dkt. 83) is **denied**;

3. Motion to Strike Motion (Dkt. 82) is **denied**;

16

Case No. 8:14-CV-1219-T-17MAP

    4. Motion for Dispositive Motion for Judgment (Dkt. 80) is **denied**.

    5. Defendant's Amended Motion for Summary Judgment (Dkt. 65) is **granted** as to the claims of Plaintiffs Yoel Betancourt, Carlos Hernandez, Osvaldo Ramirez Mendez, Jorge Calvario-Castro, Heriberto Estrada, and Roberto Gutierrez Carranzana. The Clerk of Court shall enter a final judgment in favor of Defendant General Services of VA, Inc. and against Plaintiffs Yoel Betancourt, Carlos Hernandez, Osvaldo Ramirez Mendez, Jorge Calvario-Castro, Heriberto Estrada and Roberto Gutierrez Carranzana.

    6. Defendant's Motion for Sanctions is **denied** as moot.

    **DONE and ORDERED** in Chambers in Tampa, Florida on this 23rd day of October, 2015.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record